**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**LUIS A. VEGA-COLLAZO,**

**Plaintiff,**

**v.**

**ERS HOUSING ADMINISTRATION SERVICES, INC., et al.,**

**Defendants.**

**Civil No. 25-1237 (ADC)**

## OPINION AND ORDER

## I. Introduction

Before the Court is a report and recommendation ("R&R") issued by United States Magistrate Judge Héctor Ramos-Vega in which he recommends denying defendant Melvyn E. Fontán-Lozada's ("Mr. Fontán") motion to dismiss the complaint. *See* **ECF No. 34**.[1] Mr. Fontán and his codefendant ERS Housing Administration Services, Inc., ("ERS" and together with Mr. Fontán, "defendants"), were sued by plaintiff Luis A. Vega-Collazo ("plaintiff") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. **ECF No. 1**. Mr. Fontán moved to dismiss the claims against him under Fed. R. Civ. P. 12(b)(1), claiming that the dispute is unripe for adjudication and that the Court therefore lacks subject matter jurisdiction under Article III of the United States Constitution. **ECF No. 20**. In the alternative, Mr. Fontán asked the Court to either abstain under *Colorado River Water Conservation Dist. v. United States*,

[1] ERS joined Mr. Fontán's arguments but did not file an independent motion to dismiss. *See* **ECF No. 23.**

424 U.S. 800 (1976), or exercise its inherent case management powers and stay the case until a parallel state proceeding is concluded. *Id.*

All parties agree, Magistrate Judge included, that at the center of Mr. Fontán's motion to dismiss lies the question of whether or not the debt underlying the FDCPA violations alleged in the complaint actually exists and is legally enforceable. Mr. Fontán argued that the Commonwealth of Puerto Rico's Court of First Instance ("Commonwealth Court") will determine the existence and validity of said debt in an ongoing, previously filed debt collection action against plaintiff where Mr. Fontán serves as the creditor's attorney. Because Mr. Fontán's liability under the FDCPA depends exclusively on the nature and existence of the underlying debt, he argues that plaintiff's claims against him are not ripe for adjudication, that abstention or a stay is in order. His objections to the R&R, **ECF No. 36**, are all geared towards emphasizing this fact within the applicable analysis for each contention he puts forth.[2]

The Court is not persuaded by Mr. Fontán's arguments. For starters, they are largely a repackaging of those that were already briefed and considered by the Magistrate Judge in his R&R. "If the Magistrate system is to be effective . . . the district court should be spared the chore of traversing ground already plowed by the Magistrate . . . ." *González-Ramos v. Empresas Berríos, Inc.*, 360 F. Supp. 2d 373, 376 (D.P.R. 2005) (quoting *Sackall v. Heckler*, 104 F.R.D. 401, 402-03 (D.R.I. 1984)). But even taking his objections at face value and affording them the benefit of a *de*

---

[2] ERS joined these objections at least with regard to the propriety of abstention under *Colorado River* and the alternative request for a stay. **ECF No. 37**.

*novo* review, Fed. R. Civ. P. 72(b), the Court still concurs with the Magistrate Judge's recommendation that the motion to dismiss be **DENIED**.

## II. Procedural Background

On April 28, 2025, plaintiff filed a three-count class action complaint against defendants for violations of the FDCPA. **ECF No. 1**. In the complaint, plaintiff alleges that, on or about February 14, 2024, ERS, acting on behalf of a neighborhood residents' association, the *Asociación de Residentes de Estancias de Río Hondo III* ("*Asociación*"), sent him a template-style collection letter related to a debt allegedly accrued due to non-payment of maintenance fees on his property. *Id.*, at ¶¶ 19, 75. According to plaintiff, the collection letter was intended to persuade and induce him to pay $8,591.60 in outstanding maintenance fees on his property that he claims are not due because the property at issue was exempted from certain restrictive covenants ("real servitudes") in 2004. *Id.*, at ¶ 20. Plaintiff alleges that the collection letter falsely claims that the debt exists, and that it is due and owing when the contrary is true. *Id.*, at ¶¶ 22, 23. He alleges that it contains a threat to initiate legal proceedings and to collect interest, surcharges, and penalties if the debt were left unpaid. *Id.*, at ¶ 20. Plaintiff further claims that, on February 17, 2025—about a year after the collection letter was sent—ERS, through its attorney and co-defendant, Mr. Fontán, filed a debt collection action in the Commonwealth of Puerto Rico Court of First Instance, Bayamón Part, seeking to collect on the allegedly false debt object of the collection letter. *Id.*, at ¶ 24.

In Count I, plaintiff contends that ERS violated the FDCPA by sending the collection letter and initiating the Commonwealth Court debt collection action. *Id.*, at ¶¶ 26-57. In Count II, he contends that Mr. Fontán also violated the FDCPA by initiating and prosecuting the Commonwealth Court debt collection action. *Id.*, at ¶¶ 58-67. Finally, in Count III, plaintiff maintains that ERS' standardized, template-style debt collection letter does not comply with the FDCPA and its implementing regulation, and that its routine use in ERS' debt collection practices entitles the putative class members (*i.e.*, persons who have received such letters) to damages under the statute. *Id.*, at ¶¶ 68-91.

On June 27 and September 3, 2025, Mr. Fontán and ERS, respectively, filed answers to the complaint denying the allegations. **ECF Nos. 13, 22**. Also on September 3, Mr. Fontán moved to dismiss the complaint for lack of subject-matter jurisdiction, a request that was promptly joined by ERS. **ECF No. 20, 23**. The Court referred the motion to dismiss to United States Magistrate Judge Héctor L. Vega-Ramos on September 11, 2025. **ECF No. 24**. Plaintiff then filed his opposition to the motion to dismiss on October 15, 2025. **ECF No. 33**.

On March 31, 2026, the Magistrate Judge issued his R&R recommending that the Court deny the motion to dismiss. **ECF No. 34**. Mr. Fontán filed his objections to the R&R on April 14, 2026, which were promptly joined by ERS. **ECF Nos. 36, 37**. On May 4, 2026, plaintiff filed his response to the objections. **ECF No. 42**.

## III. Legal Standard

### A. Rule 12(b)(1) and Lack of Subject-Matter Jurisdiction.

Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review as Fed. R. Civ. P. 12(b)(6) motions. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 132 (D.P.R. 2007) (citing *Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)). Therefore, in analyzing the defendants' jurisdictional challenge, the Court must "construe the Complaint liberally and treat all well-pleaded facts as true, according to the plaintiffs the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (citation modified). Nonetheless, the burden remains on plaintiffs, as the "party seeking to invoke the jurisdiction of a federal court must bear the burden of demonstrating the existence of such jurisdiction." *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). Dismissal for lack of subject-matter jurisdiction "is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." *Id.*[3]

### B. Review of Magistrate Judge's R&R.

United States Magistrate Judges are granted authority to make proposed findings and recommendations on a motion for injunctive relief, while the ultimate resolution of the motion remains at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b);

[3] Because Mr. Fontán's subject-matter jurisdiction challenge is essentially a facial one as opposed to a factual one, the Court's analysis is limited to the well-pleaded allegations of the complaint. *See Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007).

*accord* L. Civ. R. 72(a)(1). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)).

To the extent a party's objections are little more than general or conclusory, without specifying to which issues the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate judge, a *de novo* review may be unwarranted. *Id.* "Instead, the report and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to . . . submit[] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see*

*also Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Hence, the court may accept those parts of the report and recommendation to which the party does not object. *See Hernández–Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114, 125–26 (D.R.I. 2004)). The Court, however, "is not required to make separate findings of fact or issue an opinion setting forth its own reasoning." *United States v. Bach*, 388 F. App'x 2 (1st Cir. 2010) (citing *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998)).

## IV. Discussion

### A. First Objection: Whether the claims are ripe for adjudication.

First, the Court finds no fault with the Magistrate Judge's analysis on ripeness and its components, fitness and hardship. **ECF No. 34** at 9-16. The ripeness doctrine is one dimension of the constitutional concept of justiciability. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). Ripeness asks whether the issue is "fit" for judicial decision and whether "hardship" would result by withholding judicial consideration. *Id.*, at 808. The fitness inquiry itself is further divided into jurisdictional and prudential components. *Jensen v. Rhode Island Cannabis Control Comm'n*, 160 F.4th 18, 24 (1st Cir. 2025); *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017).[4] The jurisdictional question asks if "there is a sufficiently live case or controversy, at

[4] In *Reddy*, the First Circuit used the term "jurisdictional . . . component[]" to describe the first prong of the fitness test. 845 F.3d at 501 (quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)). Later, in *Jensen*, it described the first prong as a "constitutional . . . concern[]." 160 F.4th at 24 (quoting *Algonquin Gas Transmission, LLC v. Weymouth, Massachusetts*, 919 F.3d 54, 62 (1st Cir. 2019). The Court does not see any meaningful difference in the use of these two terms and will treat them as synonymous in this context.

the time of the proceedings, to create jurisdiction in the federal court," *Reddy*, 845 F.3d at 501, and "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all, thus rendering any opinion we might offer advisory[,]" *Jensen*, 160 F.4th at 24. The prudential question of the fitness inquiry refers to "whether resolution of the case turns on 'legal issues not likely to be significantly affected by further factual development.'" *Algonquin Gas Transmission, LLC v. Weymouth, Massachusetts*, 919 F.3d 54, 62 (1st Cir. 2019) (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995)).[5] Finally, the hardship inquiry, which is also prudential, asks "whether the challenged action creates a 'direct and immediate' dilemma for the parties.'" *Id.*

As the Magistrate Judge explained, taking the allegations of the complaint as true, the violations of the FDCPA have already occurred: Mr. Fontán has knowingly attempted to collect on a "non-existent" consumer debt "that was neither due nor owing." **ECF No. 1** at ¶¶ 60-63.[6] In terms of ripeness, that makes the FDCPA violations fit for judicial resolution, and the only uncertain event that lies in the future is the determination of whether Mr. Fontán indeed violated the FDCPA by filing the debt collection action—a determination that can be

[5] The "continuing vitality" of the prudential component has been called into doubt to some extent. *See California v. Trump*, No. 26-1774, 2026 WL 2144084, at *11 (1st Cir. July 25, 2026) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)). The Court nonetheless proceeds as per binding precedent.

[6] The Magistrate Judge supported his conclusion by citing to analogous decisions reached in *Wiley v. Portfolio Recovery Assocs., LLC*, No. 20CV00737SRNKMM, 2020 WL 6136146 (D. Minn. Oct. 19, 2020), *Riddle v. Portfolio Recovery Assocs., LLC*, No. 3:20-CV-00091-JWS, 2020 WL 8172991 (D. Alaska Oct. 16, 2020), *Becker v. Portfolio Recovery Assocs., LLC*, No. 20CV00791SRNKMM, 2020 WL 5366386 (D. Minn. Sept. 8, 2020), and *Pak v. Unifund CCR Partners*, No. 7:13-CV-70-BR, 2014 WL 238543 (E.D.N.C. Jan. 22, 2014). Mr. Fontán does not challenge the applicability of these cases as persuasive authority.

comfortably made within the regular course of this legal proceeding. As to the hardship factor, the Court sees no significant "dilemma" for defendants arising from having to defend against the FDCPA claims. On the other hand, plaintiff would be faced with hardship if he were to be forced to forgo his FDCPA claims for conduct that has already occurred until the Commonwealth Court acts on the validity of the underlying debt. Accordingly, Mr. Fontán's ripeness objection is **OVERRULED** and his request to dismiss he claims against him on that ground is **DENIED**.

**B. Second and Third Objections: Whether the Commonwealth Court case is a parallel proceeding under *Colorado River* and whether exceptional circumstances call for abstention.**

The Court now turns to the *Colorado River* abstention doctrine. The Magistrate Judge determined that the present action and the Commonwealth Court action are not sufficiently parallel for purposes of abstention, and that even if they were, there were no exceptional circumstances that warranted abstention. Mr. Fontán's second and third objections will be considered together given that they center on these two aspects of the doctrine's application.

First, in finding that the cases are not parallel for purposes of abstention, the Magistrate Judge relied on two conclusions. The Magistrate Judge determined that the Commonwealth Court action does not include either ERS or Mr. Fontán as formal parties, so there was no identity between the parties in the two cases. **ECF No. 34** at 17. The Magistrate Judge also concluded that the Commonwealth Court's decision on the validity of the underlying debt will not fully resolve the present action given that the complaint alleges FDCPA violations that are

independent of the validity of the debt (*e.g.*, Count III, **ECF No. 1** at ¶¶ 68-78). *Id.*, at 17-18. For his part, Mr. Fontán claims that the present action and the Commonwealth Court action are parallel cases inasmuch as a determination of the validity of the underlying debt will be dispositive of the claims against Mr. Fontán under the FDCPA.

The Court is inclined to agree with Mr. Fontán on this issue, but solely as regards the allegations against him personally. In Count II of the complaint, Mr. Fontán is alleged to have acted as a "debt collector" for purposes of the FDCPA and to have knowingly initiated a debt collection action on behalf of his client on a "non-existent" debt that "was neither due [n]or owing," which plaintiff claims violated several sections of the FDCPA, namely: 15 U.S.C. §§ 1692e (A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); 1692e(2)(A) ("The false representation of the character, amount, or legal status of any debt"); 1692e(5) ("The threat to take any action that cannot legally be taken or that is not intended to be taken"); 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). *See* **ECF No. 1** at ¶¶ 60-64. There is no other factual allegation of conduct attributed to Mr. Fontán. He is sued here, strictly speaking, solely for filing a debt collection complaint on a purportedly non-existent debt.[7] Although he is not a formal party to the Commonwealth Court case (but rather a person

---

[7] That is not to say, however, that this is somehow untoward under the FDCPA. As plaintiff points out in his response to Mr. Fontán's objections (**ECF No. 42** at 4), the Supreme Court has held that lawyers who regularly collect or attempt to collect consumer debts on behalf of others, even though they do so through litigation, are subject to the provisions of the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291 (1995).

in privity with a formal party), the truth of the matter is that if the underlying debt is deemed valid and enforceable, Mr. Fontán's liability under the FDCPA would likely dissipate.[8] *See Currie v. Group Ins. Com'n*, 290 F.3d 1, 3 (1st Cir. 2002) ("[P]erfect identity of issues is not a prerequisite." (quoting *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533 (1st Cir. 1991)). In that sense, the question of whether the proceedings are parallel in relation to Mr. Fontán is a bit closer that what the R&R reflects.[9]

Regardless, the Magistrate Judge wisely applied the *Colorado River* abstention factors and found abstention unwarranted even if the proceedings were indeed parallel. That goes to Mr. Fontán's third objection, that the Magistrate Judge erred in his appreciation of the applicable factors. **ECF No. 36** at 8-14. As noted by the Magistrate Judge, the Court's decision on whether to abstain under *Colorado River* hinges on whether there are "exceptional circumstances" showing "the clearest of justification" for departing from the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. This determination is informed by analyzing a list of eight non-exclusive factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties'

---

[8] A prediction the Court makes here without the benefit of detailed briefing by the parties. Mr. Fontán did not move for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), reason for which the Court is not in a position to evaluate the plausibility of his liability under the FDCPA.

[9] ERS, however, remains on the hook for the alleged conduct pre-dating the filing of the Commonwealth Court action in Count I of the complaint (**ECF No. 1** at ¶¶ 26-57) and the alleged violation of applicable FDCPA regulations in Count III (**ECF No. 1** at ¶¶ 68-78).

> interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 115 (1st Cir. 2012) (citation omitted). The Magistrate Judge correctly determined that only factors 3 through 7 were relevant given the facts of the case. **ECF No. 34** at 19. The other factors are either neutral or inapplicable, a conclusion to which there is no objection. *Id.*

**1. Piecemeal Litigation**

Mr. Fontán argues that the Magistrate Judge erred when concluding that the desirability of piecemeal litigation did not suffice. **ECF No. 36** at 8-11. The Magistrate Judge recognized that "[o]f all the factors, this is the one that presents a closer question" but ultimately decided that because the outcome of the state court action will neither completely nor substantially resolve all the federal claims under FDCPA," it ultimately did not support abstention. **ECF No. 34** at 20. This conclusion, as pointed out above, is shaky with regards to Mr. Fontán. But "dismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10–11 (1st Cir. 2003) (citation and quotation marks omitted). The Magistrate Judge himself cited First Circuit precedent that explains how only certain "implications" like "a clear competing policy or some special complication" provide enough of an "exceptional basis for surrendering federal jurisdiction," and how "the routine inefficiency" of litigating parallel proceedings is not a sufficiently extraordinary circumstance warranting

abstention. *See* **ECF No. 34** at 20 (first quoting *Nazario-Lugo*, 670 F.3d at 116, and then quoting *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1990)); *see also KPS & Assocs., Inc.*, 318 F.3d at 10-11 ("[C]oncerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some 'exceptional basis' for dismissing one action in favor of the other." (citation modified)). Under this rubric, the debt collection action on its face does not present any such extraordinary circumstance.[10]

Mr. Fontán nonetheless makes repeated allusions to the disruptive effects that a Commonwealth Court decision on the validity of the debt would have on the present proceedings. *See* **ECF No. 36** at 4, 6-8, 10-11. First, he harkens to the specter of inconsistent rulings between courts, relying on out of circuit case law for support. *Id.*, at 10. For example, Mr. Fontán cites to *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985), a case involving "hundreds of claims and numerous parties . . . implicat[ing] significant local interests" where refusing abstention would "force defendants to defend this complex litigation on two fronts." 762 F.2d at 211. Although the Second Circuit there cited to *Colorado River* and

[10] *But cf. Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 29 (1st Cir. 2010) (finding the piecemeal litigation factor favored abstention where state court dispute could resolve claims against both diverse and non-diverse heirs to a property situated in Puerto Rico, while federal court could not adjudicate same claims against non-diverse heirs); *Rivera-Feliciano v. Acevedo-Vilá*, 438 F.3d 50, 62 (1st Cir. 2006) (holding that the pendency of "many underlying unresolved issues" of Puerto Rican administrative and statutory law that could carry constitutional implications favored abstention to avoid piecemeal litigation); *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985) (concluding that "piecemeal litigation could severely prejudice the rights of" the insured party because the same language in the insurance policy object of the federal dispute could be interpreted differently in the pending state court proceeding, creating gaps in insurance coverage).

*Arizona v. San Carlos Apache Tribe of Arizona* to highlight the risks of having concurrent proceedings, it focused its analogy on the prejudicial effects of "an unseemly and destructive race" to first resolve the common issue, somewhat relegating the fact that the analysis in both Supreme Court cases also hinged on the existence of a clear federal policy that favored federal court abstention in the particular types of claims at issue. *Id.* (citing *Colorado River* and quoting *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 568 (1983)). No such competing policy is at issue in this dispute, which involves the merits of a simple debt collection claim between private parties that collaterally involves the supposed liability of the creditor's attorney under a federal statute. First Circuit precedent makes it clear that two different courts having to decide the same issue does not, by itself, warrant federal court abstention. "'Piecemeal litigation' must instead refer to some additional factor that places the case beyond the pale of duplicative proceedings. Put differently, a duplication of effort, while wasteful, is not exceptional." *Jiménez v. Rodríguez-Pagan*, 597 F.3d 18, 29 (1st Cir. 2010) (citation modified).

Second, Mr. Fontán invokes the prospect of the application of *res judicata* in the event that the Commonwealth Court were to rule first on the existence and enforceability of the debt. **ECF No. 36** at 4, 7 (citing *Cruz Berríos v. González-Rosario*, 630 F.3d 7 (1st Cir. 2010)).[11] But the prospect

[11] Puerto Rico's *res judicata* doctrine (*cosa juzgada)* encompasses both claim and issue preclusion, at least as of the date of its now-repealed Civil Code of 1930. *See Cruz Berríos v. González-Rosario*, 630 F.3d 7, 11-12 (1st Cir. 2010); P.R. Laws Ann. t. 31, § 3343 (2019) (repealed). The Court could not independently identify an equivalent provision in the new Civil Code of 2020, P.R. Laws Ann. t. 31, §§ 5311-11722, although two of its articles reference *cosa juzgada* in their text. *See id.*, §§ 7131, 10644. In the absence of its explicit re-codification, it appears that the doctrine may have simply transcended into the domain of general principles of law. *Id.*, at § 5315 (identifying general principles of law as a subsidiary source of law after statutes and custom).

of a *res judicata* defense is not determinative in the abstention calculus. In *Burns v. Watler*, the First Circuit vacated a lower court's decision to stay federal proceedings based on a parallel state court proceeding, applying the *Colorado River* factors. *Burns v. Watler*, 931 F.2d 140 (1st Cir. 1991). In its conclusion, the First Circuit made the following remark:

> If the more comprehensive state action ends first, its judgment would be *res judicata* with regard to the action in the federal court. If, on the other hand, the federal action concludes first, then its judgment would be *res judicata* with regard to the defendant and two federal plaintiffs who also sued in the state court . . . .

931 F.2d at 147-48. This result is "merely a necessary consequence of our dual system of courts." *Id.; see also Rojas-Hernández v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 497 (1st Cir. 1991) ("Judgment in one case may be res judicata in the other, thereby ensuring consistency.); *Ramírez Com. Arts, Inc. v. Flexcon Co., Inc.*, 242 F. Supp. 2d 113, 116 (D.P.R. 2002) ("[T]he principles of res judicata will most probably preclude further litigation of whichever of the parallel cases takes the longest to conclude. Although this is, obviously, duplicitous and inefficient, it is simply not enough to give up our jurisdiction.").

Third, Mr. Fontán also points to the jurisdiction-stripping effects that the *Rooker-Feldman* doctrine would supposedly have on this action if the Commonwealth Court were to decide the issue of the enforceability of the debt before this Court. **ECF No. 36** at 4, 7 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)), 10-11. But this argument can be dispensed easily. The *Rooker-Feldman* doctrine bars federal courts from hearing "cases brought by state-court losers complaining of injuries caused

by state-court judgments **rendered before** the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added); *see also T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1754 (2026). Because the present action commenced before the issuance of any state court judgment on the debt collection, *Rooker-Feldman* is facially inapplicable.

The Court therefore concurs with the Magistrate Judge that the desirability of avoiding piecemeal litigation does not favor abstention here.

**2. Controlling State or Federal Law**

Mr. Fontán's argues that this factor favors abstention because Puerto Rico law "controls the question regarding the subject debt's legal validity." **ECF No. 36** at 12. In support of his contention, he cites to "P.R. Law No. 108-2020, Ordinance No. 64-1991 of the Municipality of Bayamón, [] the *Asociación's* bylaws and/or restrictive covenants," and to Rule 60 of the Puerto Rico Rules of Civil Procedure, P.R. Laws Ann. t. 32 Ap. V.[12]

The Court agrees with the Magistrate Judge's conclusion that the validity of the debt is a matter predominantly governed by Puerto Rico law. *See* **ECF No. 34** at 19, 21. "However, the presence of state law issues weighs in favor of dismissal in only rare circumstances—namely, 'when a case presents complex questions of state law that would best be resolved by a state court.'" *KPS*, 318 F.3d at 11 (quoting *Villa Marina*, 915 F.2d at 15) (citation modified). This is more

[12] Rule 60 of the Puerto Rico Rules of Civil Procedure, P.R. Laws Ann. t. 32 Ap. V, provides for an expedited process to litigate claims of less than $15,000. The Court does not understand why Mr. Fontán believes that a non-outcome-determinative procedural rule applicable only in the Puerto Rico courts would have any relevance in this case.

so when the outcome of the claims against Mr. Fontán will ultimately turn on the application of federal law. The lack of a valid debt under Puerto Rico law may result in a finding of no liability for Mr. Fontán under the FDCPA—a position that the Court assumes for purposes of argument—but the contrary is equally true. Both determinations will be made under federal law, even if the validity of the debt turns on the application of Puerto Rico law. Under these circumstances, the Court cannot conclude that this factor favors abstentions.

### 3. Vexatious or Contrived Nature of Federal Claims

Mr. Fontán argues that the Magistrate Judge erred in concluding that there was "no evidence that the present action was filed for any vexatious or contrived purpose." **ECF No. 36** at 12 (quoting **ECF No. 34** at 22). He alludes to both the timing of the filing of this federal action and the type of remedies that plaintiff requests. In his view, the fact that plaintiff filed his federal complaint "just a few weeks after" filing an answer and counterclaim in the debt collection action evinces "a reactive attempt . . . to try to dissuade or discourage [him] from carrying out his legal and fiduciary duties towards his clients . . . ." *Id.*, at 13.

Mr. Fontán's position is not wholly unreasonable. His inclusion in this case comes about exclusively because he filed the debt collection action on behalf of his client, the *Asociación*. But beyond mere conjecture on plaintiff's motivations for suing him, Mr. Fontán's argument lacks support. The filing of the debt collection action in the Commonwealth Court was predicate enough to raise specter of liability under the FDCPA—assuming, as the well-pleaded allegations of the complaint suggest, that he is a "debt collector" under the statute and knew that the

underlying debt was non-existent or unenforceable. Accordingly, ". . . nothing in the record suggests that [plaintiff's] intention was other than to exercise [his] right to have the tribunals with jurisdiction entertain [his] claims, something [he was] clearly entitled to do." *Burns v. Watler*, 931 F.2d at 147. This factor therefore does not favor abstention.

### 4. Judicial Economy and Comprehensive Disposition

At the end of his discussion on the *Colorado River* factors, Mr. Fontán invokes the motivating principle behind the abstention doctrine, arguing that the Magistrate Judge "failed to consider that abstention and/or stay would ensure judicial economy and a comprehensive disposition of the present litigation. **ECF No. 36** at 13. He further appeals to "principes of comity" as favoring abstention. *Id.*, at 14 (citing *Currie v. Group Ins. Com'n*, 290 F.3d 1, 3 (1st Cir. 2002)). But this Hail Mary pass makes little difference this late in the analysis, after having gone through the relevant abstention factors. Again and again, the case law on abstention cautions against its application except in cases presenting truly extraordinary circumstances. This is not one of them. To paraphrase the First Circuit, plaintiff's federal action involves a simple matter of liability under the FDCPA requiring in part the application of settled local law. *See Nazario-Lugo*, 670 F.3d at 117. "The parallel actions here trigger, at most, only routine risks . . . ." *Id.* While Mr. Fontán will have to tolerate some "routine inefficiency" in defending himself here while at the same time proceeding with his client's case in the Commonwealth Court, that does not compel this Court's surrender of its constitutional and statutory jurisdiction.

***

In sum, although the Court is inclined to sustain Mr. Fontán's second objection regarding the parallel nature of the proceedings with regards to the claims made against him, the Court would nonetheless overrule his third objection directed at the Magistrate Judge's weighing of the *Colorado River* factors. Accordingly, the Court **SUSTAINS IN PART, OVERRULES IN PART** Mr. Fontán's second and third objections, with the ultimate result being that Mr. Fontán's request for abstention under *Colorado River* is **DENIED.**

### C. Fourth Objection: Whether a discretionary stay is called for.

As a final objection, Mr. Fontán appeals to the Court's broad discretion to manage its own docket in the hopes of gaining a stay while the Commonwealth Court proceeding continues. ECF No. 36 at 14-15. This objection is underdeveloped, and the Magistrate Judge ploughed through this field already, finding that "a careful balancing of the competing interests" disfavors an open-ended stay. **ECF No. 34** at 24. The Court's own review of the R&R and Mr. Fontán's objections lead it to the same conclusion. For the moment, a discretionary stay is not warranted.[13] Mr. Fontán's objection is **OVERRULED**.

## V. Conclusion

For the reasons explained above, the Court **SUSTAINS IN PART, OVERRULES IN PART** defendant Melvyn E. Fontán-Lozada's objections to the Magistrate Judge's Report and

---

[13] An important caveat: this denial should not be construed as foreclosing the possibility of granting a renewed request for a stay in the future, particularly if all parties jointly request one. *See Rojas-Hernández*, 925 F.2d at 497 n.4 ("We do not mean to suggest that, where all parties agree, a federal court may not feel free to coordinate its proceedings with those in a state court. . . . We hold merely that, in an adversarial situation such as this, plaintiff is entitled to have his case move forward in ordinary course without linkage to the state proceeding.").

Recommendation, at **ECF No. 36**. Nonetheless, the Court **ADOPTS** the Report and Recommendation at **ECF No. 34** as modified in part in this Opinion and Order. The motion to dismiss at **ECF No. 20** is, accordingly, **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 2nd day of September 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**